UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANA  J. MILLER,

                    Plaintiff,

                                            Case No. 2:09-CV- 674
          vs.                               District Judge Sargus
                                            Magistrate Judge Kemp

COUNTRYWIDE HOME LOANS,
ET AL.,

                    Defendants

OPINION AND ORDER

Plaintiff Dana J. Miller, who is proceeding *pro se,* is (or was) a resident

homeowner in Delaware County, Ohio.  His original Complaint was filed on August 3,

2009; however, on September 28, he moved for an extension of time to file an amended com-

plaint, which led to his filing of the present Amended Complaint (Doc. 19) on October 19,

2009,[1] naming the same defendants less two "John Does" who had been included in the original

Complaint.  In much greater detail than his original pleading, Plaintiff now complains of pro-

cedures employed and costs imposed in inducing him to refinance his home loan and

mortgage on March 28, 2006, and in the subsequent foreclosure proceedings against

him initiated by Defendant Countrywide Home Loans, Inc. (Countrywide) in the

Common Pleas Court of Delaware County, Ohio, on August 28, 2008, which led to a

_____

1. On September 28 Plaintiff had moved for an extension of time to file an amended complaint,
which the Magistrate Judge granted by an Order that he might "seek leave" to so file no later than
October 19, 2009.  Doc. 18.  Plaintiff then proceeded to filed his present Amended Complaint on
October 19 without separately seeking leave to do so.  See, Fed. R. Civ. P. 15(a)(1)(A).

judgment in foreclosure by that court on April 21, 2009.  Besides Countrywide, the Defendants named in the Amended Complaint are Quantum Appraisal Company, which Plaintiff  believed had done the appraisal that was used to support the refinanced home loan and mortgage,[2] and Mortgage Electronic Registration Systems, Inc, (MERS), named in documents pertinent to the foreclosure proceeding, as well as the law firm of Carlisle, McNelli, Rini, Kramer and Ulrich Co. LPA (Carlisle-McNelli), which represented Countrywide in the foreclosure proceeding against Plaintiff Miller.

After 65 paragraphs of generally applicable factual allegations related primarily to circumstances surrounding the refinancing of his home loan and its mortgage in 2006 as well as to various details of, or related to, the subsequent foreclosure proceedings that followed, beginning in August  2008 and ending with entry of judgment on April 21, 2009 (Id., ¶¶ 10-75), Plaintiff attempts to set out eight separate causes of action.  As titled by Plaintiff in the Amended Complaint, they may be summarized as follows:

First Cause of Action – FRAUD (presumably under the law of Ohio) "from the beginning of solicitation for the mortgage loan to Plaintiff, through the fraudulent appraisal and continuing into the foreclosure action and attempted theft of the Plaintiff's property."  ¶¶ 76-78.

Second Cause of Action – TILA VIOLATIONS (expressly under 15 U.S.C. §1635 and regulation Z 226.23 (12 C.F.R. 226.23) for failure to provide documents

---

2.  Plaintiff  has since discovered otherwise, and pursuant to his motion (Doc. 26) Quantum has been dismissed as a party defendant in this case.  Doc. 42.

2

and full disclosure prior to and/or at closing. ¶¶ 79-84.

Third Cause of Action – PREDATORY LENDING (presumably under the law of Ohio [see ORC §1345.031(A) and (B)(12) (mortgage loan "flipping") ] in Countrywide's solicitation of, and arrangements for, Plaintiff's refinancing of his mortgage loan. ¶¶ 85-88.

Fourth Cause of Action – FRAUDULENT CONCEALMENT (presumably under the law of Ohio) by Countrywide and Quantum in failing to disclose the true nature of the mortgage loan refinancing based on Quantum's inflated appraisal. ¶¶ 86-96.

Fifth Cause of Action – VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (expressly under 15 U.S.C. § 1601 et seq.) by Countrywide's failure "to honestly disclose the true nature of the alleged loan." (15 U.S.C.§1601(a))  Plaintiff also alleges Countrywide's violations of the Act in failing to provide validation and verification of Plaintiff's mortgage within 28 days of his demand made June 10, 2008, or before foreclosure proceedings were commenced against him on August 28, 2008 (15 U.S.C. § 1692).   ¶¶ 98-106.

Sixth Cause of Action – VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT (expressly under O.R.C. §§ 1345.01 - 13) by Countrywide and Quantum in failing to accurately, fairly and honestly appraise Plaintiff's property and conspiracy to produce an inflated appraisal to fraudulently qualify Plaintiff for a loan to obtain unjust enrichment from Plaintiff. ¶¶ 107-111.

Seventh Cause of Action – WIRE AND MAIL FRAUD (expressly in violation

3

of 18 U.S.C. §1342) by Defendants in using interstate telephone lines, electronic mail and United States Postal Service to transmit false and fraudulent representations in furtherance of their fraudulent dealings with Plaintiff. ¶¶ 112-116.

Eighth Cause of Action – VIOLATIONS OF RICO (expressly 18 U.S.C. §§ 1961, 1962, 62(b), and 62(c)) in a pattern of racketeering activity involving more than two acts of wire fraud in violation of 18 U.S.C. §1343 and by fraudulent activities and schemes to obtain money and property by means of false and fraudulent pretenses and by making knowingly false and misleading representations with the intent that Plaintiff and others similarly situated surrender ownership of real property as a result of such fraudulent actions, including fraudulent foreclosure actions. ¶¶ 117- 129.

In the closing sub-paragraphs of his Amended Complaint, Plaintiff expressly seeks threefold actual damages totaling not less than $12,000,000 as provided in 18 U.S.C. §1964(c), plus $12,000,000 punitive damages, plus fees and costs, and such "other, further, or general relief that this Court deems just and equitable."

Plaintiff asserts there is "subject matter jurisdiction under the laws of the United States of America, Article III § 2, U.S. Constitution: 42 U.S.C. 1983, 1985 and 1986 (failure to prevent) as conferred by the U.S. Constitution 28 USC 1331 and 1343 under the 1st, 4th, 5th, 6th, 8th, and 14th Amendments." Doc. 19, ¶7. Plaintiff also refers to jurisdiction "supplemented by 28 USC 1367(a)" and to "constitutional violations of state and federal law, procedure and *practice* by state and federal officials and officers of the court." Ibid. (italics. by Pltf.).

4

Posture of the Case and Applicable Law.

Defendant Quantum having been dismissed as explained in note 1 above, the Court now has before it separate motions to dismiss based on Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. Pro., filed by Defendants Countrywide and MERS (Doc. 25) and by Defendant Carlisle-McNelli (Doc. 28). Each was filed before answer or other pleading responsive to either Plaintiff's original or Amended Complaint. Because Plaintiff is thus far proceeding *pro se* and the pleadings are as yet incomplete, the issues presented are limited and subject to liberal analysis in Plaintiff's favor.

Both motions before the Court recognize this to the extent they agree that the Court is basically required to construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of any of his claims that would entitle him to relief. See, e.g., LRL Properties v. Portage Metro Housing Authority, 55 F.3d 1097, 1101 (6th Cir. 1995) (cited by Defendants Countrywide and MERS); Bower v. Federal Express Corp., 96 F.3d 200, 203 (6th Cir. 1996) (cited by Defendant Carlisle-McNelli). Defendants cite further authority to the effect that the Court is not required to supply omitted critical facts or accept unwarranted factual inferences or legal conclusions. See Lewis v. ABC Bus. Servs, Inc., 135 F.3d 389 (6th Cir. 1998); Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006). And, indeed, recent Supreme Court authority appears to have added still further standards to Rule 12(b)(6) analysis. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-556 (2007) ("Factual allegations must be enough to raise a right to relief above the spec-ulative level."); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then de-termine whether they plausibly give rise to an entitlement to relief.").

The Court is well aware of this authority and its pertinence to the issues pre-sented by the Defendants' two motions. However, this Plaintiff is proceeding *pro se* while none of the above authority involves a *pro se* plaintiff, and as the Second Cir-cuit has recognized, recent Supreme Court authority also makes clear that circum-

stance remains an important consideration in evaluating the complaint in this case.
Citing the Supreme Court's opinion in <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct.
2197, 167 L.Ed.2d 1081 (2007) (per curiam), the circuit court explains:

> . . . . The Court reversed the Tenth Circuit's dismissal of a prisoner's
> Eighth Amendment claim, holding that the court of appeals had "de-
> part[ed] from the liberal pleading standards" of Rule 8(a). *Id.* at 2200.
> The Court reiterated that "[s]pecific facts are not necessary," and that
> the complainant "need only 'give the defendant fair notice of what
> the . . . claim is and the grounds upon which it rests.' " *Id.* (quoting
> *Twombly*, 127 S.Ct. at 1964 (internal quotation marks omitted) (alter-
> ation in original)). But *Erickson* also emphasized that the court of
> appeals' departure from Rule 8(a)'s liberal pleading standard was
> particularly unwarranted because the complainant was *pro se*: " A
> document filed *pro se* is to be liberally construed and a *pro se* com-
> plaint, however inartfully pleaded, must be held to less stringent
> standards than formal pleadings drafted by lawyers." *Id.* (internal
> quotation marks and citations omitted).

<u>Boykin v. KeyCorp</u>. 521 F.3d 202, 213-14 (2nd Cir. 2008).

Bearing in mind this less-stringent pleading standard, the Court first notes
that Plaintiff still must present fair notice of a claim or claims against the Defen-
dants that are within this Court's jurisdiction.  Pursuant to Article III of the Con-
stitution, this is a court of limited jurisdiction, as possibly applicable in these cir-
cumstances,  authorized to hear civil cases arising under the Constitution, laws, or
treaties of  the United States (see 28 U.S.C. § 1331) including, specifically, certain
actions involving civil rights (see 28 U.S.C. § 1343), as well as large civil cases
between citizens of different states (see 28 U.S.C. § 1332), and some cases in which
the United States, itself, is a party (28 U.S.C. §§ 1345, 1346).  The Court may also
exercise supplemental jurisdiction to consider state-law claims related to cases or
controversies over which it otherwise has original jurisdiction (28 U.S.C. § 1367).
Here, the United States is not a party and no diversity of citizenship or alleged

violation of treaty rights has been pled. Thus, if this Court has subject-matter jurisdiction, that must be "federal question" jurisdiction arising under the Constitution or laws of the United States.

Plaintiff's Amended Complaint references the United States Constitution and various amendments including the Fourteenth (see Doc. 14, ¶ 7) , but, for the most part, those provisions apply to and control the conduct of federal, state, and local governments and/or their officers and agents, not the conduct of private parties. See Flag Bros., Inc. v.Brooks, 436 U.S.149, 156 (1978) ("[M]ost rights secured by the Constitution are protected only against infringement by governments.") As a result, they do not, by themselves, provide an adequate basis for proceedings such these between private parties to recover money damages based on claimed constitutional violations. See, e.g., Blum v. Yaretsky, 457 U.S. 991, 1002-03, 102 S.Ct. 2777, 2785 (1982).[3] "A decision by a state court, no matter how erroneous, is not itself a violation of the Constitution actionable in federal court. See *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir.1995)." Centres, Inc. v. Town of Brookfield, Wis. 148 F.3d 699, 702 (7th Cir. 1998).

_____

3. "The Fourteenth Amendment of the Constitution provides in part that '[n]o State shall ... deprive any person of life, liberty, or property without due process of law.' Since this Court's decision in the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), 'the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States.' *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). 'That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.' *Ibid.* See *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed. 2d 477 (1974); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)."

Plaintiff also relies on certain provisions of federal statutory law (42 U.S.C. §§ 1983, 1985, and 1986, see Ibid.) that *do* create a private rights of action in certain circumstances, based on such claims; however, for different reasons, none of those will support Plaintiff's claims in the circumstances of this case, either.

Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3,(1979). That section authorizes "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To be successful on such a claim under §1983, however, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." West v. Atkins,487 U.S. 42, 48 (1988) (emphasis supplied).

> Under 42 U.S.C. § 1983, a plaintiff must allege (1) deprivation of a right secured by the federal Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law. Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991) (citations omitted).

Smith v. Hilltop Basic Resources, Inc., 99 Fed.Appx. 644, 645-46, 2004 WL 1152170, *2 (6th Cir.6 2004). Assuming *arguendo* that Plaintiff may be able to establish that some right or rights secured to him by federal law have been violated, the only Defendants before the Court who might be found liable for such violation are not alleged to have been "acting under color of state law."

8

The only Defendants here are the plaintiff, its privy, and its counsel in the State of Ohio foreclosure proceeding on Plaintiff's debt and mortgage; and, in general, neither litigants nor their counsel are "state actors" for purposes of stating a viable § 1983 claim merely because they are making use of the state's courts and/or its laws.  See, e.g., <u>McDougald v. Jensen</u>, 786 F.2d 1465, 1488-89 (11th Cir.1986); <u>Kelm v. Hyatt</u>, 44 F..3d 415, 421-22 (6th Cir. 1995); <u>Dahlberg v. Becker</u>, 748 F.2d 85, 90-93 (2nd Cir.1984); <u>Miller v. Compton</u>, 122 F.3d 1094, 97-98 (8th Cir.1997). Although, under some circumstances, "the conduct allegedly causing the deprivation of a federal right [may] be fairly attributable to the State" (<u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 937 (1982)), ". . . private-party defendants' invocation of presumptively valid state procedures . . . amounts, at most, to the sort of statutory misuse or abuse that *Lugar* specifically instructs does <u>not</u> give rise to state action.  See 457 U.S. at  941" (<u>Revis v. Meldrum</u>, 489 F.3d 273, 291 (6th Cir. 2007) (emphasis supplied); and ". . . simply invoking or following unchallenged state procedures, even if done in bad faith, does not render . . . private-party defendants state actors." (<u>Id.</u> at 292).  Further,

> . . . Application of the *Lugar* test does not change the vast weight of authority that private attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983. *Polk County v. Dodson*, 454 U.S. 312, 318, 102 S.Ct. 445, 450, 70 L.Ed.2d 509 (1981).FN2

<u>Barnard v. Young</u>,  720 F.2d 1188, 1189 (10th Cir. 1983) (parallel citations and footnote omitted).  This Court therefore must conclude that Plaintiff here has not stated a claim under § 1983.

9

Plaintiff also refers to 42 U.S.C. § 1985, which provides remedies to private persons injured by conspiracies to violate certain civil rights.  However, that section covers a variety of possible private-rights violations, and the only ones it appears Plaintiff might rely on here are contained in §1985(3) (conspiracies for the purpose of depriving "any person or class of persons" of the equal protection of law or of equal privileges and immunities) or, perhaps, the second clause of §1985(2) (conspiracies to deny, impede, obstruct, hinder, or defeat the due course of justice with intent to deny "any citizen" equal protection of law or to injure "him" for enforcing or attempting to enforce "the right of any person or class of persons" to equal protection of law); and both of those provisions include limitations Plaintiff has not and, it appears, cannot meet.

In <u>Griffin v. Breckenridge</u> the Supreme Court recognized §1985(3)'s applicablity to private actions. 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).  The Court there also points out a significant limitation:

> . . . . That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. . . .  The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.

<u>Id.</u>, 101-102.  As our circuit has put it, a Plaintiff seeking to invoke §1985(3),

> . . . . must prove that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]" *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983).  A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender.

10

*Hicks v. Resolution Trust Corporation*, 970 F.2d 378, 382 (7th Cir. 1992).

Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc., 32 F.3d 989, 994 (6th Cir. 1994).

Both the Supreme Court and the Sixth Circuit were specifically referring to the provisions of Section 1985(3), and Plaintiff may argue here that he seeks to rely on the second clause of Section 1985(2); but courts generally agree the second clause of Section 1985(2) carries the same pleading requirements as Section 1985(3). See Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975); Herrmann v. Moore, 576 F.2d 453, 457-58 (2nd Cir. 1978); Pravda v. City of Albany, N.Y., 956 F.Supp. 174, 180 (N.D.N.Y. 1997)("It is well settled that a plaintiff attempting to establish a claim under 42 U.S.C. § 1985(2), clause 2, or § 1985(3), must demonstrate that the defendant under consideration acted with class-based invidiously discriminatory animus.")   In this case, Plaintiff's Amended Complaint contains no allegations of any racial or other tra-ditionally cognizable class-based discriminatory animus.  As to any claims based on § 1985, the circuits appear in general agreement that such a situation warrants dismissal for failure to state an actionable claim.  See Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975); Gleason v. McBride, 869 F.2d 688, 695, (2nd Cir. 1989); Carchman v. Korman Corp., 594 F.2d 354 (3rd Cir. 1979); Rogers v. Tolson, 582 F.2d 315, 317 (4th Cir. 1978); Ohio Inns, Inc. v. Nye, 542 F.2d 673 (6th Cir. 1976); Arnold v. Tiffany, 487 F.2d 216 (9th Cir. 1973); Wilhelm v. Continental Tire Co., 720 F.2d 1173, 1176 (10th Cir. 1983); see also Lowe v. Letsinger, 772 F.2d 308, 311 (7th Cir. 1985).

Finally, regarding Plaintiff's reference to 42 U.S.C. §1986, it is also clear that

a valid claim can be stated under §1986 only where the complaint first states a valid claim under §1985.  See Haverstick Enterprises, 32 F.3d at 994 (citing Browder v. Tipton, 630 F.2d 1149, 1155 (6th Cir. 1980)); Radvansky v. City of Olmsted Falls, 395 F.3d 291, 315 (6th Cir.2005) ("But '[w]here plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986.' ") (quoting Braley v. City of Pontiac, 906 F.2d 220, 227 (6th Cir.1990)); McCalden v. California Library Assoc., 955 F.2d 1214,  (9th Cir. 1990): Trerioce v. Pedersen, 769 F.2d. 1398, 1403 (9th Cir. 1985).  Thus, as with claims under §§ 1983 and 1985, the Amended Complaint in this case does not contain an adequate basis for a claim under §1986.

Consistent with the above, the Court concludes that its basic subject-matter jurisdiction in this case must be found, if at all, in one or more of the federal statutes relied on, or plainly implicated[4] at least one of the claims made through Plaintiff's eight specific causes of action.  Only if such a federal basis for jurisdiction exists will it likely be appropriate for the Court to exercise its supplemental jurisdiction under 28 U.S.C. §1367 to rule on Plaintiff's state-law claims.  See Landfield v. Marion General Hospital Inc., 994 F.2d 1178, 1182 (6th Cir.1992) (Generally, if federal claims are dismissed before trial, state law claims should be dismissed as well.  Citing Taylor v. First of America Bank-Wayne, 973 F.2d 1284 (6th Cir. 1992) and United Mine Workers v. Gibbs, 383 U.S. 715 (1966)); Rossi v. Gemma, 489 F.3d

---

4. "A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss. See, e.g., *Sagana v. Tenorio,* 384 F.3d 731, 736-37 (9th Cir.2004);  *Austin v. Terhune,* 367 F.3d 1167, 1171 (9th Cir. 2004); *Cabrera v. Martin,* 973 F.2d 735, 745 (9th Cir.1992)." Alvarez v. Hill,  518 F.3d 1152, 1157-58 (C.A.9 (Or.),2008).

26, 39-40 (1st Cir. 2007) (quoting <u>Rodriguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168,

1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plain-

tiff's federal claims at the early stages of a suit ... will trigger the dismissal without

prejudice of any supplemental state-law claims.")); see also 28 U.S.C. §1367(c)(3).


Motion to Dismiss of Defendants Countrywide and MERS.

Defendants Countrywide and MERS have moved the Court pursuant to Rules

12(b)(1) and 12(b)(6), Fed. R. Civ. P., to dismiss the Amended Complaint, with prej-

udice, specifically on the grounds it "is barred by *res judicata,* collateral estoppel

and the *Rooker-Feldman* Doctrine."[5] Doc. 25, p. 1. These three grounds are based

on the April 21, 2009 judgment of the Delaware County Court of Common Pleas

(Case No. 08 CV E 08 1170) finding Plaintiff in default of payment on his mortgage

loan and foreclosing his property in favor of Countrywide's equity of redemption,

more than three months before this case was filed. Doc. 25, Ex. C.

Initially, these Defendants argue *res judicata* and collateral estoppel, but

that is to put the cart before the horse. The *Rooker-Feldman* doctrine stands gen-

erally for the proposition that federal "cases brought by state-court losers com-

plaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of

those judgments" are "properly dismissed for want of subject-matter jurisdiction."

<u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 284 (2005). Thus,

---

5. After <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362
(1923), and, 60 years later, <u>District of Columbia Court of Appeals v. Feldman</u>, 460
U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)

this Court first needs to determine that dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction is not required, before it can appropriately proceed to questions under Rule 12(b)(6) concerning possible *res judicata* or collateral estoppel bars to adequate statement of any claimed causes of action.  See GASH Associates v. Village of Rose-mont, Ill.  995 F.2d 726, 728 (7 Cir. 1993) (If the federal plaintiff seeks to set aside a state judgment, the district court lacks jurisdiction; if plaintiff presents some independent claim then there is jurisdiction, and state law will determine whether the defendant prevails under principles of preclusion.)

In their argument for application of this doctrine, other than the Rooker and Feldman decisions themselves and a brief reference to Exxon Mobil, Defendants cite, quote, and rely on a single, unpublished decision from our circuit, dated Dec. 22, 2005, Kafele v.Lerner, Sampson & Rothfuss, L.P.A., 161 Fed Appx. 487, 2005 WL 3528921.  As an unpublished decision, however, especially one rendered well before recent changes to the Federal Rules of Appellate Procedure and Sixth Circuit Rules,[6] this case may be cited, but it has no, or very limited, precedential value. This is so, first, because "this Court's unpublished decisions 'are never controlling authority.' *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 591 (6th Cir. 2001)." Inge v. Rock Financial Corp., 281 F.3d 613, 625-26 (6th Cir. 2002).  Second, this limitation must be considered particularly applicable here, where later, *published* opinions of this circuit make clear that Kafele fails to recognize a significant change in circuit

---

6.  See Fed. R. App. P. 32.1, effective 12-1-06, and 6th Cir. R. 28(f).  However, the Advisory Committee notes recognize that even those amendment address only *citation* of unpublished dispositions, not their precedential value, which continues to be governed by circuit rules.

law wrought by the Supreme Court's ruling in Exxon Mobil, earlier the same year.

In Exxon Mobile, the Court noted that:

> Variously interpreted in the lower courts, the [*Rooker-Feldman*] doctrine ha[d] sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738. See, e.g., *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199-200 (C.A.2 1996).

544 U. S. at 283. The Court then held that application of the doctrine is properly "confined to cases of the kind from which it got its name.' Id. at 284. Since then, our circuit has several times recognized this, properly limited, scope of the doctrine.

> . . . . [I]n the limited circumstances in which a plaintiff complains of an injury directly caused by a state-court judgment, if the plaintiff believes that the trial court did not give him or her a reasonable opportunity to pursue a claim, the proper course of action is to appeal the judgment through the state-court system and then to seek review by writ of certiorari from the U.S. Supreme Court. *Cf. Postma v. First Fed. Sav. & Loan of Sioux City*, 74 F.3d 160, 162 n. 3 (8th Cir.1996) (collecting cases and concluding that "there is no procedural due process exception to the *Rooker-Feldman* doctrine"). However, if the plaintiff has a claim that is in any way independent of the state-court judgment, the *Rooker- Feldman* doctrine will not bar a federal court from exercising jurisdiction.

Abbott v. Michigan, 474 F.3d 324, 330 (6th Cir. 2007) (footnote omitted).

> . . . . Thus, the *Rooker-Feldman* doctrine does not prohibit all federal cases that are somehow related to a prior state-court decision. "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.' " *Id.* [*Exxon Mobil*]]at 293, 125 S.Ct. 1517 (alteration and omission in original) (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir.1993)).

In re Hamilton, 540 F.3d 367, 371-72 (6th Cir. 2008) (decided by a panel including this Court, sitting by designation). See also more recent unpublished decisions in

Pittman v. Cuyahoga County Dep't of Children & Family Serv., 241 Fed.Appx. 285, 287, 2007 WL 2050840 **3 (6th Cir.2007) (citing McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006)), and Brown v. First Nationwide Mortg. Corp., 206 Fed.Appx. 436: 2006 WL 3289232 (6th Cir. 2006)).

From his Amended Complaint in this case, it is clear that Plaintiff is very un-happy with the foreclosure proceedings against him in the Delaware County Court of Common Pleas and that he believes he was not treated properly or in accordance with various requirements of the Constitution and probably both federal and Ohio law in the course of those proceedings. And, there is little doubt he would proceed on such claims here, if permitted. But, it is also clear those claims are not the only basis for Plaintiff's present Amended Complaint or, more important at this point, determinative of whether *Rooker-Feldman* operates to bar this Court's subject mat-ter jurisdiction of this case. That is dependant upon whether Plaintiff "has a claim that is *in any way independent* of the state-court judgment" Abbott at 330 (empha-sis supplied).

Here, Plaintiff is not just seeking to have this Court review and reverse, or vacate, or set aside the state-court foreclosure judgment and/or related orders, and he is not basing his claims on alleged errors or deficiencies in those proceedings alone. Rather, Plaintiff is seeking money damages, and although he may claim in part based on such errors and deficiencies in the state-court proceedings (which *Rooker-Feldman* renders beyond the jurisdiction of this Court), his Amended Com-plaint also makes related, but clearly separate, claims based on alleged violations of

federal and state law over which this Court does have jurisdiction unaffected by the earlier foreclosure judgment in state court proceedings. The *Rooker-Feldman* doctrine therefore does not operate to deprive this Court of subject-matter jurisdiction in this case.

These Defendants also argue that the Delaware County Common Pleas judgment foreclosing on Plaintiff's property together with the doctrines of *res judacata* and/or collateral estoppel combine to bar Plaintiff from now proceeding against them on his Amended Complaint here.  See Doc. 25, pp. 4-7

> Preclusion in federal litigation following a judgment in state court depends on the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal court to give the judgment the same effect as the rendering state would. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

GASH, 995 F.2d at 726.  As a result:

> A federal court, asked to give res judicata effect to a state court judgment, must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation. *ED Systems Corporation v. Southwestern Bell Telephone Company*, 674 F.2d 453, 457 (5th Cir.1982); *Southern Jam*, 675 F.2d at 97-98.

Hernandez v. City of Lafayette, 699 F.2d 734, 736 (5th Cir. 1983);  see also Abbott, 474 F.3d at 330-31 ("Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. 28 U.S.C. § 1738.")

There is no doubt Ohio subscribes to the basic *res judacata* rule that a final, unappealed judgment on the merits in one action, even if erroneous, is not open to collateral attack in a second action, but can be corrected only by a direct review and that, left uncorrected, error in the first action does not deprive any of the original

parties of the right to rely upon a plea of res judicata in a second proceeding on the same cause of action. See <u>Federated Dept. Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981). Because his failure to appeal has rendered the foreclosure judgment final, this rule effectively bars claims based on Plaintiff's various complaints about the procedures, evidence, rulings, and outcome of that proceeding, itself. However, in Ohio the basic res judacata rule effectively has two parts, applicable in different ways depending on the circumstances, so that Defendants' arguments respecting Plaintiff's separate causes of action here require further analysis.

> In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6. "Claim preclusion prevents subsequent actions, by the same parties or their privies, <u>based upon any claim arising out of a transaction that was the subject matter of a previous action</u>," whereas issue preclusion, or collateral estoppel, "precludes the relitigation, in a second action, of <u>an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action</u>." *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140; see *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E.2d 713.

<u>State ex rel. Nickoli v. Erie Metro-Parks</u>, 124 Ohio St.3d 449, 453, 923 N.E.2d 588, 592 (2010) (emphasis supplied).

Although these Defendants argue both *res judicata* and collateral estoppel, examination of the two judgment documents from Plaintiff Miller's foreclosure case in the Delaware County Court of Common Pleas (Doc. 25, Exhibits B, (Doc. 25-1) and C (Doc. 25-2)) makes it clear the question presented by the motion of these Defendants involves claim preclusion, not issue preclusion. Defendants Countrywide

and MERS were parties or privies in the previous foreclosure proceeding on Plaintiff's property, and they are seeking the broadest application of the *res judicata* bar so as to cover any and all of Plaintiff's claims here, and *issue* preclusion will not..

> The concept of issue preclusion, also known as collateral estoppel, will preclude the relitigation of a fact or point that was actually and directly at issue in a previous proceeding between the same parties or their privies, and was passed upon and determined by a court of competent jurisdiction. See *Ft. Frye*, 81 Ohio St.3d at 395, 692 N.E.2d 140; *Goodson v. McDonough Power Equip., Inc*, (1983), 2 Ohio St.3d 193, 443 N.E.2d 978, paragraph one of the syllabus; *Trautwein v. Sorgenfrei* (1979), 58 Ohio St.2d 493, 391 N.E.2d 326, syllabus; *Norwood v. McDonald* (1943), 142 Ohio St. 299, 52 N.E.2d 67, paragraph three of the syllabus. Notably, "[i]t is not enough that a similar issue * * * was litigated and decided * * *. For collateral estoppel to bar the relitigation of an issue, precisely the *same* issue must have previously been litigated and decided." *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 185, 637 N.E.2d 917. (Emphasis *sic*.)

Robinson v. Springfield Local School Dist. Bd. of Educ., Summit Co. No. 20606 (Ohio App. 9 Dist..) 2002 WL 462860, *3. The Ohio Supreme Court has also said it is an absolute due process prerequisite to the application of collateral estoppel that the party asserting the preclusion prove the "identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." Goodson v. McDonough Power Equipment, Inc., 2 Ohio St.3d 193, 201, 443 N.E.2d 978, 985-86 (1983). The mere listing by title and summary denial of Plaintiff Miller's various motions and other filings in the Delaware County foreclosure proceedings (see Doc. 12-2) does not demonstrate actual litigation and direct determination of any issues raised by Plaintiff, beyond those actually embodied in the loan foreclosure judgment itself. Thus, collateral estoppel, or issue preclusion, would not operate to bar any of his claims here that were not "identical,... actually litigated, directly determined,

and essential to the judgment" in the prior foreclosure proceeding.

What these Defendants seek to claim advantage of here is the very broad res judacata, *claim*-preclusion bar embodied in Ohio's rule "that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (1995) (overruling portions of Norwood v. McDonald, 142 Ohio St. 299 (1943) and Whitehead v. Gen. Tel. Co., 20 Ohio St.2d 67 (1986)). Grava also reaffirmed the statement made in Natl. Amusements, Inc. v. Springdale, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180 (1990), "that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit.' " (quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69) (1986). Grava at 382  (emphasis in the original).  National Amusements also cited Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees, 69 Ohio St.2d 241, 245-46, 431 N.E.2d 672, 675 (1982) (Defendant who fails to raise a defense in the first action is barred from raising it in a later action), and Univ. of New Hampshire v. April, 115 N.H. 576, 580-81, 347 A.2d 446, 450-51 (claim in second action which amounted to a defense not raised in the first action barred by res judicata.)  See also Geauga Truck and Implement Co. v. Juskiewicz, 9 Ohio St.3d 12, 457 N.E.2d 827 (1984) (unraised compulsory counterclaim to buyer's prior breach of warranty action barred later action by seller for cost of repair work done).

Amended Complaint's Separate Causes of Action

Consistent with the Court's two separate bases for subject-matter jurisdiction in this case, it will first analyze Defendants' motion with respect to Plaintiff's "federal question claims. The Court will therefore defer discussion of Plaintiff's First, Third, Fourth and Sixth causes of action, i.e., those which do not name or otherwise clearly rely on federal statutory law, until after it has ruled on the federal claims in Plaintiff's Second, Fifth, Seventh and Eighth causes of action.

Plaintiff's Second Cause of Action (violations of TILA and Regulation Z).

The TILA (Truth in Lending Act) is a federal consumer protection statute that provides consumers with a cause of action against creditors that fail to make required disclosures. 15 U.S.C. §§ 1601 et seq. ; 12 C.F.R. § 226 ("Regulation Z"). The purpose of the TILA is to

> . . . .promote the informed use of consumer credit by requiring disclosures about its terms and costs. Regulations give consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulate certain credit card practices, and provide a means for fair and timely resolution of credit billing disputes.

12 C.F.R. § 226.1(b). Regulation Z (12 C.F.R. § 226.1(c) applies to an individual or business that offers or extends credit when four conditions are met:

> (i) credit is offered or extended to consumers;
> (ii) offering or extension of credit is done regularly;
> (iii) credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and
> (iv) credit is primarily for personal, family, or household purposes.

It is not disputed that the TILA and Regulation Z applied to Defendant Countrywide in connection with the refinancing of Plaintiff's home loan and mortgage on March 28, 2006, and that they imposed responsibility for various notices and disclosures of information about that transaction to Plaintiff, which responsibility he alleges the Defendant did not meet in more than one respect.  In case of such a violation, the statute provides a right of action for four types of damages.  See 15 U.S.C. §1640.  "The violation 'occurs' when the transaction is consummated.  Nondisclosure is not a continuing violation for purposes of the statute of limitations."  In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984).  Further, the credit transaction is consummated when  "a contractual relationship is created between [a creditor and consumer]."  Bourgeois v. Haynes Construction Co., 728 F.2d 719, 720 (5th Cir.1984).  Thus, any right of action for TILA damages in this case would normally have expired March 28, 2007, one year after Plaintiff's' loan refinancing was consummated (15 U..S.C. §1640(e) and well before it could have been used in defense to Countrywide's foreclosure action filed August 28, 2008.

However, there is a established "recoupment exception" to the limitations bar on TILA actual damages claims. See Williams v. Countrywide Home Loans, Inc., 504 F.Supp.2d 176, 187 (S.D.Tex.,2007)(quoting Moor v. Travelers Ins. Co., 784 F.2d 632, 633 (5th Cir.1986).

> . . . . To meet the "recoupment" exception, a party must show that the TILA claim was brought as a recoupment or set-off claim in response to a creditor's "action to collect the debt." 15 U.S.C. § 1640(e). "This sub-section does not bar a person from asserting a violation of this subchapter [§ 1640] in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a

matter of defense by recoupment or set-off in such action, except as otherwise provided by State law."

Ibid.  The Fifth Circuit also noted that such "a recoupment or set-off claim will be exempt from the one-year statute of limitations only when the debtor's claim is raised as a defense."  Moor at 633.

The Supreme Court has defined "recoupment" as "in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded."  Such a defense is said never to be "barred by the statute of limitations so long as the main action itself is timely." Bull v. U.S., 295 U.S. 247, 262 (1935).  A "set-off claim" is "a counter demand which a defendant holds against a plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action." In re Smith, 737 F.2d at 1552 (quoting Ballentine's Law Dictionary 1167 (3d ed.1969)).

> To meet the requirements for recoupment, a debtor must show that: (1) the TILA violation and the debt are products of the same transaction; (2) the debtor asserts the claim as a defense; and (3) the main action is timely.

Moor, 784 F.2d at 634 (citing In re Smith, 737 F.2d at 1553).

It therefore appears that Plaintiff here could have raised his TILA damages claim "as a matter of defense by recoupment or set-off" in Countrywide's foreclosure action, thus making it "a defense not raised" in that action and, under Ohio's rules of claim preclusion, a bar to Plaintiff's later TILA claim in this case.  This cause of action will therefore be dismissed with prejudice here.

Plaintiff's Fifth Cause of Action (violations of the Fair Debt Collections Act)..

The purpose of the Fair Debt Collection Practices Act ("FDCPA") is to "elim-

inate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  If the court finds that a party has violated the FDCPA, the court may hold that party liable for monetary damages. Id., § 1692k.

In this case, Plaintiff alleges that "Defendants Countrywide and Counsel for Countrywide" committed a number of violations of the Act's requirements during the period leading up to filing of the foreclosure proceedings against him on August 28, 2008.  See Doc. 19, ¶¶ 39 - 42, 106.  Among others, those include alleged failure to honestly disclose the true nature of the loan (¶ 100), failure to provide complete validation and verification of the debt upon demand (¶¶ 101, 102) and to cease and desist collection activities upon demand (¶ 103).

These FDCPA claims against Countrywide necessarily fail because it is the creditor-lender, and not a "debt collector" bound by that statute.  The term "debt collectors" refers to "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692(a) (6). However, that term expressly does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." §1692(a)(6)(A). Mortgage companies collecting debts are not "debt collectors." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.1985) (noting that legislative history of the act

24

indicates that a "debt collector" does not include the consumer's creditors, a mort-

gage servicing company, or an assignee of a debt as long as the debt was not in

default at the time it was assigned).  As to Defendant Countrywide, therefore, this

cause fails as a matter of law.  See <u>Williams v. Countrywide Home Loans</u>, 504

F.Supp.2d at 190.

Because there are also no allegations whatever against Defendant MERS

relative to this claim, the motion of Defendants Countrywide and MERS to dismiss

this cause of action will be granted as to both.


Plaintiff's Seventh Cause of Action – WIRE AND MAIL FRAUD (expressly in vio-

lation of  18 U.S.C. §1343, presumably including §1361 as well)

Plaintiff cannot proceed against these Defendants on such criminal claims.

. . . .  Violations of these sections of the federal criminal code [the fed-
eral mail and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343] . . . do not
give rise to private causes of action. *Ryan v. Ohio Edison Co.*, 611 F.2d
1170, 1177-79 (6th Cir.1979); *Napper v. Anderson, Henley, Shields,
Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir.1974).  Since no
damages can be obtained in an action brought directly under these
statutes, they cannot be used to bootstrap punitive damages into an
action for fraud brought under state law.

<u>Morganroth & Morganroth v. DeLorean</u>,  123 F.3d 374, 386 (6th Cir. 1997).

In *Oppenheim v. Sterling*, 1966, 368 F.2d 516, 518-519, the Tenth
Circuit held that 18 U.S.C. §§ 1341, 1342, relating to mail fraud, are
purely penal and rejected 'the view that a violation of these penal
statutes as such affords the court federal question jurisdiction in a civil
case.'  The wire fraud act, 18 U.S.C. § 1343, is closely analogous to the
mail fraud statute, 18 U.S.C. § 1341, and likewise evidences no intent
of Congress to grant additional federal question jurisdiction in civil
cases.

<u>Napper v. Anderson, Henley, Shields, Bradford and Pritchard</u>, 500 F.2d 634, 636

(5th Cir. 1974).

This cause of action will therefore be dismissed with prejudice as to all Defendants in this case.  See <u>Wiggins v. Philip Morris, Inc.</u>, 853 F.Supp. 470 (D.D.C. 1994) (Federal mail and wire fraud claims would be dismissed because they are criminal offenses having no corresponding private right of action.)

Plaintiff's Eighth Cause of Action – VIOLATIONS OF RICO (expressly 18 U.S.C. §§ 1961, 1962, 62(b), and 62(c)).

After incorporating his entire Amended Complaint to that point (¶ 117), Plaintiff alleges, among others, that "Defendants[7] conducted a pattern of racketeering activity of wire fraud described above," (¶ 118) "involving more than two acts of wire fraud in violation of 18 U.S.C. §1343" (¶ 120), in carrying out "fraudulent activities and schemes" to obtain "money and real property by means of false and fraudulent pretenses" and by making knowingly false and misleading representations "with the intent that Plaintiff and others similarly situated would surrender ownership of real property" (¶ 121) and by "fraudulent foreclosure actions" to collect unlawful debts (¶ 123).  Plaintiff claims Defendants have violated both  18 U.S.C. §1962(b) (¶ 129) and §1962(c) (¶ 123) to create his right to recover damages pursuant to 18 U.S.C. §1964(c).

Those sections (18 U.S.C. §§ 1962(b) and (c) of RICO) render civilly liable any

---

7. The only Defendant identified by name in the 13 paragraphs contained in this cause of action is Defendant Countrywide, which Plaintiff identifies in paragraph two of the Amended Complaint as "a Corporation and mortgage lender authorized to engage in the mortgage lending business in the state of Ohio.  Doc. 19, ¶ 2.

"person": who, through "a pattern or racketeering activity," acquires or maintains an interest in or control of an enterprise engaged in interstate commerce, 18 U.S.C. § 1962(b); or who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs through a "pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" includes any act indictable under numerous federal criminal provisions, including mail and wire fraud as those offenses are defined at 18 U.S.C. §§ 1341 and 1343. 18 U.S.C. § 1961(1)(B).

RICO states that a "pattern of racketeering activity requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). To establish the requisite pattern, Plaintiffs "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original). Here, the acts of racketeering actually alleged, wire and mail fraud, took place over a relatively short period from October 2005 (Doc. 19, ¶ 11) until the Plaintiff's home loan was refinanced on March 21, 2006 (Id., ¶ 34), and they are not pled with enough specificity to permit an inference that such predicate acts were a regular way of conducting Defendants' business or that they amount to, or pose a threat of, continued criminal activity. Cf., Gott v. Simpson, 745 F.Supp. 765, 770 -771 (D.Me.,1990) (ruling that comparable allegations failed to allege facts demonstrating a "pattern of racketeering activity," which warranted granting of motion to dismiss); Ellipso, Inc. v. Mann, 541 F.Supp.2d 365, 376-77 (D.D.C. 2008) (acts part of single scheme to defraud of short duration, standing

27

alone, did not support the conclusion that Defendants' business was regularly conducted using mail and wire fraud, thus failing to allege facts demonstrating a "pattern of racketeering activity," which circumstance warranted dismissal).

More important in this case is the fact that Defendant Countrywide is a corporation (Doc. 19, ¶ 2) and it is the only "person" against which any colorable allegations of RICO violation are made[8], while at the same time it is the "enterprise" involved in either alleged violation.  It is long and well established that:

> Under 18 U.S.C. § 1962, et seq., the RICO statute, the "person" responsible for violation of the statute must be separate from the alleged criminal enterprise itself. *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385, 397 (6th Cir.1989), cert. denied sub nom. *Trager, Glass & Co. v. Newmyer*, 495 U.S. 930, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1297 (6th Cir.1989), cert. denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990); *Bennett v. United States Trust Co.*, 770 F.2d 308 (2d Cir.1985), cert. denied, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

Palmer v. Nationwide Mut. Ins. Co. 945 F.2d 1371, 1373 (6th Cir. 1991).  Further, it is clear that:

> Under RICO, a corporation cannot be both the "enterprise" and the "person" conducting or participating in the affairs of that enterprise. See, e.g., *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir.1989).  Under the "non-identity" or "distinctness" requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members.  An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself.  See *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982).

---

8. Neither of the other remaining Defendants is mentioned in this cause of action, nor elsewhere in the Amended Complaint is either specifically alleged to have committed acts that would establish racketeering activity or collection of unlawful debt.  See ruling on Carlisle-McNelli motion to dismiss, below.

Begala v. PNC Bank, Ohio, Nat. Ass'n  214 F.3d 776, 781 (6th Cir. 2000); see also

Davis v. Mutual Life Ins. Co. of New York,  6 F.3d 367, 377 (6th Cir. 1993).

The pleadings on this claim are inadequate for either of the above reasons.
This cause of action will therefore be dismissed as to both these Defendants.


Motion to Dismiss of Defendant Carlisle-McNelli

Defendant Carlisle-McNelli has moved the Court pursuant to Rules 12(b)(1)
and 12(b)(6), Fed. R. Civ. P., to be dismissed "as a party to this action" and, alter-
natively, that the Court "separately dismiss the various claims" of the Amended
Complaint against it.  Doc. 28.  Defendant argues both that this Court lacks juris-
diction because, at least as to any claims against it, the Complaint is "entirely im-
matrial and wholly insubstantial and frivolous" (Doc. 28, p. 5), and that various
separate parts of the Amended Complaint fail to adequately state a claim against
it (Id., pp. 6-8).  Mindful of the standards (discussed above) properly applicable to
its analysis of the *pro se* pleadings in this case, the Court cannot find that it lacks
all subject-matter jurisdiction based on overall insubstantiality of Plaintiff's claims.
However, based on its analysis of the Plaintiff's various possible claims, as set out
above in response to the motion of Defendants Countrywide and MERZ, together
with the further analysis added here below in response to this motion, the Court
makes the following rulings.

So far as it is adequately pled in the Amended Complaint without unwar-
ranted characterizations and inferences, Plaintiff has alleged no more than that

29

this Defendant provided a limited amount of lawful legal advice and services to Countrywide's facially lawful business, in connection with the latter's foreclosure proceeding against Plaintiff. That does not state any claim against this Defendant under the United States Constitution or 42 U.S.C. §1983 or §1985, and for the same reason discussed above, §1986 can not be relied on either.

With respect to Plaintiff's Second Cause of Action (violations of TILA and Regulation Z), because there is no suggestion that this Defendant is an individual or business that offers or extends credit under any of the conditions listed in that statute and regulation (see pp. 21-22 herein) there are simply no allegations in the Amended Complaint to implicate this Defendant in possible TILA liability. The claim against this Defendant will also be dismissed with prejudice.

With respect to Plaintiff's Fifth Cause of Action (violations of the Fair Debt Collections Act), there are also no sufficient allegations in the Amended Complaint to proceed against this Defendant. Carlisle-McNelli is a law firm, and a law firm may be held liable for violations of the Act as a "debt collector," if it can be shown that the law firm "regularly" collects debts for purposes of the FDCPA and that it collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice. See Schroyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999). Here, it is not alleged this Defendant regularly collects debts for it clients or that it committed any specific violation of the Act. (Those are alleged to have been done by Defendant Countrywide. See Doc. 19, ¶¶ 99-105.) This FDCPA claim will therefore be dismissed

30

against this Defendant, without prejudice.

Plaintiff's Seventh Cause of Action (WIRE AND MAIL FRAUD) fails against this Defendant for the same reason it fails against the other two Defendants: there is no private right of action under the statutes relied on. The claim against this Defendant will therefore be dismissed with prejudice, as well.

With respect to Plaintiff's Eighth Cause of Action (VIOLATIONS OF RICO), the allegations of the Amended Complaint are insufficient against this Defendant, as well. As noted above, so far as it is adequately pled in the Amended Complaint without unwarranted generalizations, inferences, or characterizations, Plaintiff has alleged no more than that this Defendant provided a limited amount of lawful legal advice and services to Countrywide's facially lawful business as its counsel in the latter's foreclosure proceeding against Plaintiff. That does not state a RICO claim against this Defendant. Cf. Baumer v. Pachl, 8 F.3d 1341 (9th Cir. 1993) (attorney's limited involvement in fraudulent scheme by limited partnership through preparation of two letters, partnership agreement, and assistance in bankruptcy proceeding was not sufficient to meet conduct or participation requirements for RICO liability); Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L., 832 F.Supp. 585 (E.D.N.Y.,1993) (RICO did not impose civil liability on attorney who provided legal advice and services to clients, even if, in so doing, attorney intentionally assisted clients' scheme to defraud plaintiff where there was no evidence that attorney participated in operation or management of RICO enterprise.). The claim will therefore also be dismissed against this Defendant.

31

Consistent with the foregoing analysis and rulings made above, the Court hereby ORDERS as follows:

The Motion to Dismiss of Defendants Countrywide Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc. (Doc. 25) is GRANTED, as to the Amended Complaint's (Doc. 19) Second and Seventh Cause of Action with prejudice and as to the Fifth and Eighth Cause of Action without prejudice;

The Motion to Dismiss of Defendant Carlisle, McNelli, Rini, Kramer and Ulrich Co. LPA  (Doc. 28) is GRANTED, as to the Amended Complaint's (Doc. 19) Second and Seventh Cause of Action with prejudice and as to the Fifth and Eighth Cause of Action without prejudice;

The Court declines to exercise its discretionary supplemental jurisdiction over the state-law claims in the First, Third, Fourth, and Sixth Causes of Action in the Amended Complaint (Doc. 19) and the same are therefore DISMISSED without prejudice;

The remainder of the Amended Complaint (Doc. 19) is DISMISSED without prejudice as to all Defendants, for failure to state a claim upon which relief can be granted, whereupon all pending motions are moot and the case is closed.

IT IS SO ORDERED.


September 30, 2010                        /s/Edmund A. Sargus, Jr.
Dated                                    EDMUND A. SARGUS, JR.
                                         United States District Judge


32